NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| DONALD EASTERLING, | : | Civil Action No. 16-4463 (JMV/MF) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| RICHARD PEREZ, *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

**VAZQUEZ, District Judge:**

## I.      INTRODUCTION

This matter comes before the Court upon Defendants Barry Baker, Joao Oliveira, and Richard Perez's motion for summary judgment on all claims still pending against them in this civil rights matter.   (ECF No. 53.)   *Pro se* Plaintiff Donald Easterling opposes the motion.   (ECF No. 58.)   For the reasons set forth below, Defendants' motion is granted.

## II.      PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff is presently incarcerated at New Jersey State Prison, where he is serving a sentence of twenty years to life, after being convicted in New Jersey state court of multiple charges related to his July 30, 2014 armed robbery of a dollar store located in Newark, New Jersey (the "Store"). (*See* Mar. 27, 2017 Crim. Hr'g Tr. 26, ECF No. 53-12 at PageID: 931.)   Plaintiff's present civil action arises out of the gunshot injury he sustained in the course of that robbery.   As previously explained by the Court, Plaintiff's July 22, 2016 Complaint (at ECF No. 1) contains the following pertinent factual allegations:

On July 30, 2014, around 3:00 p.m., Plaintiff went to [the Store].

(ECF No. 1, ¶ 6(3).) The Store owner[, Lloyd Darby,] and two accomplices attacked Plaintiff and beat him on the head and face, without cause. (*Id.*) Captain Richard Perez of the Newark Police Department arrived and shot Plaintiff in the back through the glass window of the [S]tore. (*Id.*, ¶ 6(4).) While bleeding profusely from the gunshot wound, Plaintiff was handcuffed and placed in the back of a patrol car. (*Id.*, ¶ 6(7).) Officers Barry Baker and Joao Oliveira of the Newark Police Department drove Plaintiff around in the patrol car instead of immediately taking him to the hospital. (*Id.*, ¶ 6(8).)

(Aug. 29, 2017 Op. at 2, ECF No. 29.)[1]

Based on those allegations, the Court found that Plaintiff stated viable excessive force and delay in medical care claims under 42 U.S.C. § 1983 and its state law counterpart, the New Jersey Civil Rights Act ("NJCRA"), as to Baker, Oliveira, and Perez (hereinafter, the "Remaining Defendants"). (*See* Nov. 11, 2016 Op. and Order, ECF Nos. 7, 8.) Those are the only claims in Plaintiff's Complaint which the Court permitted to proceed past *sua sponte* screening under 28 U.S.C. § 1915(e)(2)(B), and those are the only claims which remain pending in this matter. (*See id.*; *see also* Aug. 22, 2017 Order, ECF No. 30.)

On February 27, 2017, the Remaining Defendants filed a motion to dismiss Plaintiff's excessive force and denial of medical care claims under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18.) The Remaining Defendants appended relevant portions of the record of Plaintiff's state criminal proceedings to that motion. The Court's August 27, 2017 Opinion summarized the information and testimony therein as follows:

The Honorable Siobhan A. Teare, J.S.C., presided over Plaintiff's criminal trial. (ECF No. 18-4 at 1.) On December 1, 2017, Judge Teare held a *Miranda* hearing and reviewed the facts concerning Plaintiff's arrest, hospitalization, discharge from the hospital, and interrogation. (ECF No. 18-3.) Plaintiff did not testify or offer witnesses on his behalf at trial. (ECF Nos. 18-4 – 18-7.) On July 30, 2014, Plaintiff pled guilty to second-degree possession of a

---

[1]Captain Perez has since retired from the Newark Police Department.

weapon by a convicted felon.   (ECF No. 18-7 at 7T34:17-21; 7T39:23 to 40:8.)   On December 13, 2016, a jury found Plaintiff guilty of robbery, unlawful possession and unlawful use of a gun, using the gun to assault or threaten the Store's occupants, aggravated assault of Mr. Darby and Officer Dominguez, and possession of a large capacity ammunition magazine. (ECF No. 18-7 at 7T27:5 to 29:22.) . . . .

According to the testimony at trial, Plaintiff went into the Store on July 30, 2014, in the presence of Mr. Darby, the Store's Owner, and others, one of whom was James Harris.   (ECF No. 18-5 at 3T80:7 to 82:1; 3T116:2-5)).   Plaintiff pulled a gun out of his bag, and told everyone to get on the floor.   (*Id.* at 3T81:15 to 82:1; 3T116:2-5.) Mr. Harris was able to escape through the front door, lock it, and go for help.   (*Id.* at 3T81:10 to 82:22.)   Mr. Darby ignored Plaintiff's command to drop to the floor.   (*Id.* at 3T115:18 to 116:14.) Plaintiff responded by putting the gun to Mr. Darby's head and cocked the trigger.   (*Id.* at 3T114:20-22.)   Plaintiff robbed the occupants of the Store.   (*Id.* at 3T116:15 to 117:6.)

In the meantime, Mr. Harris found Officer Perez nearby and told him of the armed robbery.   (*Id.* at 3T36:6 to 37:21; 3T82:20 to 84:13.)   They proceeded to the front door of the Store, which was made mostly of plexi-glass.   (*Id.* at 3T43:14 to 44:3; 3T44:14-21; 3T45:16 to 46:2.)   As they approached the front door from the outside, Plaintiff was approaching from the inside, and Officer Perez saw that Plaintiff had a gun pointed at them.   (*Id.* at 3T43:14 to 44:3.)   Officer Perez fired two shots at Plaintiff through the door. (*Id.*)   The plexi-glass door did not shatter. (*Id.* at 3T50:25 to 51-7.) Unbeknownst to Officer Perez, a piece of the bullet hit Plaintiff in the back when he turned.   (*Id.* at 3T6:-9 to 70:23.)   Shortly after the shots were fired, Officer Dominguez arrived on the scene and began to assist Officer Perez in opening the plexi-glass door.   (*Id.* at 3T71:21 to 72:6.)   Meanwhile, Mr. Darby saw that Plaintiff had been wounded, and he enlisted the help of other occupants of the Store to attack Plaintiff.   (*Id.* at 3T128:17 to 130:6.)   They tried to wrestle the gun from Plaintiff's hand.   (*Id.* at 3T147:14-19.) Plaintiff resisted and moved towards the front door of the Store. (*Id.*)

Meanwhile, Officers Baker and Dominguez tried to gain entry to the Store after Officer Baker fired two shots.   (*Id.* at 3T47:3 to 48:19.) The robbery victims in the Store then successfully tossed Plaintiff to the ground.   (*Id.*; 3T53:1 to 16.)   At this point, Plaintiff shot Officer Dominguez in the knee.   (*Id.*)   Officer Baker then entered the Store.   (*Id.* at 3T161:14 to 20.)   After Plaintiff was subdued by

the Store occupants, Officer Baker handcuffed Plaintiff. (*Id.*) As he was walking Plaintiff to a police car, Baker noticed for the first time that Plaintiff was bleeding profusely from the back. (*Id.*) He put Plaintiff in the police car and began to drive to the hospital, but on the way, he saw an ambulance and waived down the driver. (3T164:17 to 166:21.) The EMS driver preliminarily treated Plaintiff and then transported him to University Hospital. (*Id.*) Officer Baker arranged for police escorts and blocked traffic to expedite Plaintiff's transportation to the hospital. (*Id.*) Plaintiff was discharged from the hospital at [or around] 6:55 p.m. (*Id.* at 1T8:17 to 9:4.)

(Aug. 29, 2017 Op. at 2-4, ECF No. 29.)

On August 29, 2017, the Court denied the Remaining Defendants' Rule 12(b)(6) motion. (ECF No. 30.) In so doing, the Court expressly noted that "for the purpose of ruling on [that] motion to dismiss, the Court [could not] consider [testimony in Plaintiff's criminal] trial transcripts for the truth of the facts asserted therein." (ECF No. 29 at 12.) The Court, however, also made clear that it could properly consider such evidence in a "motion for summary judgment under Federal Rule of Civil Procedure 56." (*Id.* at 9.)

On July 13, 2018, the Remaining Defendants filed the present Rule 56 motion for summary judgment. (ECF No. 53.) The Remaining Defendants have appended copies of the above-summarized transcripts to that motion. (*See* ECF Nos. 53-6, 53-14 – 53-17.) The Remaining Defendants have also appended the following: Plaintiff's May 22, 2018 deposition transcript (ECF 53-8); a certification from Officer Barry Baker executed on July 12, 2018 (ECF No. 53-2); a certification from Officer Joao Oliveira executed on July 13, 2018 (53-3); relevant portions of the Newark Police Department's July 30, 2018 event chronology report (ECF No. 53-4); and documents from University Hospital which speak to the medical treatment Plaintiff received on July 30, 2014. (ECF No. 53-13.) The significance of this evidence is discussed *infra*.

Plaintiff filed opposition to the present motion on or about September 17, 2008. (ECF No.

58.)  Plaintiff's opposition consists solely of a Brief (*id.* at PageID: 1282), and his Response to Statement of Material Facts (*id.* at PageID: 1303); Plaintiff has not submitted any additional evidence for consideration by the Court.   Plaintiff's opposition fails to appropriately dispute – or otherwise credibly challenge – the truth of the factual assertions set forth in the Remaining Defendants' Statement of Undisputed Material Facts (at ECF No. 54).   Plaintiff likewise fails to "[cite] to the affidavits and other documents submitted in connection with the [Remaining Defendants' summary judgment] motion."   L. Civ. R. 56.1.   In other words, Plaintiff does not meaningfully challenge the significance of the evidentiary materials appended to the Remaining Defendants' summary judgment motion and provides no reason for the Court to question the undisputed nature of the material facts derived therefrom.   Indeed, in their December 6, 2018 Letter Reply, the Remaining Defendants correctly note that Plaintiff's opposition consists entirely of "unsworn, unsupported factual allegations[.]"   (ECF No. 59 at PageID: 1337.)

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment.   *Id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   "A party asserting that a fact [is not] genuinely

disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents . . . , affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

    "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F. 3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). In that respect, the Court's role in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

## IV.    ANALYSIS

### a.  Claims Under Section 1983 and the Doctrine of Qualified Immunity

#### (i)  42 U.S.C. § 1983

As noted above, Plaintiff asserts that Newark Police Officers Joao Oliveira, Barry Baker, and Richard Perez used excessive force to effectuate his arrest and intentionally delayed his receipt of medical care on July 30, 2014.   These claims are actionable under federal law pursuant to 42 U.S.C. § 1983.   Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To obtain relief under this statute, Plaintiff must establish: (i) that one of his rights secured by the Constitution or laws of the United States was violated; and (ii) that this violation was caused or committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights).

#### (ii) Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Thus, government

officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Couden v. Duffy*, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. *Id.* (internal citations omitted).

Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Malley*, 475 U.S. at 341 (1986); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (the general touchstone is whether the conduct of the official was reasonable at the time it occurred). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

> **b.** **Officer Joao Oliveira is Entitled to Summary Judgment; Nothing in the Record Suggests That Oliveira Was Personally Involved in Plaintiff's Arrest or Transportation to University Hospital on July 30, 2014**

In order for Section 1983 liability to attach to "[an individual] defendant in a civil rights action[, that defendant] must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In addition to a defendant's direct interactions with a civil rights plaintiff, "[p]ersonal involvement can be shown through . . . personal direction or of actual knowledge and acquiescence." *Id.* This means that a civil rights defendant may be liable under Section 1983 if he refuses to intervene when a constitutional violation takes place in his presence and "there is a realistic and reasonable opportunity to intervene." *Smith v. Mesinger*, 293 F.3d 641, 651 (3d Cir. 2002) (internal quotation marks and citations omitted).

Here, the record evidence conclusively demonstrates that on July 30, 2014, Officer Oliveira "never interacted with Plaintiff" – not "during the robbery, his arrest, or his transportation to the hospital." (*See* Oliveira July 13, 2018 Cert. at ¶ 7, ECF No. 53-3; *accord* Baker Cert., Ex. 1, ECF No. 53-2 (Officer Baker making no reference to Officer Oliveira in his July 30, 2014 incident report); Pl.'s May 22, 2018 Dep. Tr. 55-57, ECF No. 53-8 (Plaintiff testifying that he did not have any direct interactions with Oliveira and affirming that "the only reason [he] attached [Officer] Oliveira to the case is because [Plaintiff] believe[d] he was . . . in the car when [Plaintiff was]

being driven to the hospital.").)  Moreover, there is no record evidence to suggest that Officer Oliveira was in a position to stop the allegedly unconstitutional acts committed by Captain Perez and Officer Baker on July 30th.  (*See* Antoine Cert. ¶ 15, ECF. No. 53-5 (counsel for Remaining Defendants certifying that Plaintiff "represented [during his deposition] that he would produce documents indicating [Oliveira's] involvement in Plaintiff's arrest and medical treatment, but he [has] never produced any such documents."); *accord* Pl.'s May 22, 2018 Dep. Tr. 56, ECF No. 53-8.)

In sum, there is nothing before the Court which suggests that Officer Oliveira directly interacted with Plaintiff on July 30, 2014.  The record is likewise devoid of any evidence demonstrating that Oliveira was otherwise personally "involved in Plaintiff's handcuffing or [in] the provision of medical services [to him]."  (Defs' July 13, 2018 Br., ECF No. 53-18 at PageID: 1232.)  Summary judgment is accordingly granted in favor of Officer Joao Oliveira on Plaintiff's Section 1983 claims.  *See Baker v. City of Elizabeth*, No. 11-360, 2017 WL 4220363, at *7 (D.N.J. Sept. 22, 2017) ("Because Plaintiff has not produced evidence demonstrating that [two police officers] had any personal involvement in the alleged constitutional violations or were in the position to stop any alleged constitutional violations, Plaintiff's claims cannot stand as to either [of those defendants].").

### c.  Captain Perez and Officer Baker's Respective Actions on July 30, 2014

The following core facts as to Plaintiff's Section 1983 denial of medical care and excessive force claims are undisputed:  Captain Perez is the individual who shot Plaintiff on July 30, 2014. (*See* Remaining Defs.' Statement of Undisputed Material Facts ("SUMF") ¶ 14, ECF No. 56.) Officer Baker is the individual who handcuffed Plaintiff on that date.  (*Id.* at ¶ 29.)  Officer Baker placed Plaintiff in handcuffs *after* Plaintiff was shot.  (*See id.*)  Officer Baker then placed

Plaintiff in a Newark Police Department patrol car and drove Plaintiff away from the Store.   (*Id.* at ¶¶ 30, 31.)   Officer Baker thereafter transferred Plaintiff to the ambulance which ultimately delivered Plaintiff to University Hospital for medical treatment.   (*Id.* at ¶¶ 33-36.)

### d. Plaintiff's Section 1983 of Excessive Force Claims

"A cause of action exists under § 1983 when a law enforcement officer uses force so excessive that it violates" the Fourth Amendment's protection against *unreasonable* searches and seizures.   *Groman v. Twp. of Manatapan*, 47 F.3d 628, 633-34 (3d Cir. 1995) (emphasis added). In that regard, "[p]olice officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force."   *Id.* at 634 (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 572 (3d Cir. 1988)).   Ultimately, "[a] claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable."   *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002); *see also Graham*, 490 U.S. at 396.

Here, it is undisputed that Captain Perez shot Plaintiff on July 30, 2014 and that Officer Baker thereafter placed Plaintiff in handcuffs.   Both Defendants therefore undisputedly seized Plaintiff in a manner which implicates the Fourth Amendment.   *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."); *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (a police officer who "employ[s] excessive force in the course of handcuffing [violates] the Fourth Amendment.").   As such, the lone issue that this Court must resolve on summary judgment with respect to Plaintiff's excessive force claims is whether Captain Perez and Officer Baker's respective actions on July 30th were "objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation."   *Norcross v.*

*Town of Hammonton*, 04-2536, 2008 WL 9027248, at *4 (D.N.J. Feb. 5, 2008) (quoting *Graham*, 490 U.S. at 397).

Resolution of this issue requires "careful attention to the facts and circumstances of [this] particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Groman*, 47 F.3d at 634 (quoting *Graham*, 490 U.S. at 396): *see also Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). Moreover, this "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *see also Sharrar*, 128 F.3d at 820-21. If there is any evidence in the record which plausibly suggests that either Perez or Baker acted in an objectively unreasonable manner, as viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight[,]" then an award of summary judgment in favor of that Defendant would be inappropriate. *See Graham*, 490 U.S. at 396-97; *Velez v. Fuentes*, No. 15-6939, 2016 WL 4107689, at *4 (D.N.J. July 29, 2016).

> **(i) Captain Richard Perez is Entitled to Summary Judgment on Plaintiff's Section 1983 Excessive Force Claim; the Record Demonstrates that His Use of Deadly Force Against Plaintiff was Objectively Reasonable Based on the Facts Then Known to Him**

As noted above, "apprehension by the use of deadly force is a seizure subject to the [Fourth Amendment's] reasonableness requirement[.]" *Garner*, 471 U.S. at 7. "Claims of excessive force—deadly or not—are analyzed under the Fourth Amendment's objective 'reasonableness' standard." *Gardner v. New Jersey State Police*, No. 15-8982, 2018 WL 5342715, at *9 (D.N.J. Oct. 29, 2018) (citing *Graham*, 490 U.S. at 395); *accord Johnson v. City of Philadelphia*, 837 F.3d

343, 349 (3d Cir. 2016) ("the ultimate—and only—inquiry" in deadly force cases is whether the officer's actions were objectively reasonable); *Scott v. Harris*, 550 U.S. 372, 383 (2007) (same).

The Court finds that Captain Perez's use of deadly force to effectuate Plaintiff's arrest was objectively reasonable in light of the particular circumstances of this case. The following undisputed facts are material to this conclusion: On July 30, 2014, at or about 3:00 p.m., Plaintiff entered the Store, brandished a firearm, and proceeded to rob the occupants of the Store. (SUMF ¶¶ 1-2, ECF No. 54.) At that time, Captain Perez was driving his police vehicle near the vicinity of the Store. (*See* Dec. 7, 2016 Crim. Trial. Tr. 36 (Perez's testimony), ECF No. 53-15.) One of the individuals who was inside the Store during the robbery, James Harris, escaped. (SUMF at ¶ 9.) While Perez was sitting at a red light, Mr. Harris approached Perez's vehicle and advised him that a robbery involving one suspect and multiple victims was being committed inside the Store. (*See* Dec. 7, 2016 Crim. Trial. Tr. 36-37 (Perez's testimony), *id.* at 83-84 (Harris's testimony).) Captain Perez and Mr. Harris then headed to Store's entrance. (SUMF at ¶ 11.)

Shortly thereafter, Plaintiff – who was then holding a firearm in his hand – attempted to exit the Store. (*Id.* at ¶ 8.) At that time, Captain Perez observed – through a plexi-glass door – that Plaintiff was brandishing a gun as he attempted to flee and perceived that Plaintiff was pointing that gun in his and Mr. Harris's direction. (*Id.* at ¶ 12.) Perez responded by firing two shots at Plaintiff in quick succession. (*Id.* at ¶ 13.) A piece of Perez's second bullet hit Plaintiff in the back. (*Id.* at ¶ 14.) Captain Perez stopped shooting as soon as he realized Plaintiff was retreating back inside the store. (*Id.* at ¶ 15) From the time Plaintiff reached the plexi-glass door with gun in hand to the time Plaintiff began retreating back into the Store was "[three] seconds at most." (*Id.* at ¶ 16.; Pl.'s May 22, 2018 Dep. Tr. 35, ECF No. 53-8.)

These undisputed facts find ample support in the record. For example, at Plaintiff's criminal trial, Captain Perez provided the following relevant testimony:

> I exited my car. I took out my service weapon and . . . had it pointed down. [A]s I approached the [Store's] door, that's when I saw [Plaintiff] coming towards the door. I could see him clearly through the door that he had a handgun, a Glock in his hands. I was in immediate fear that he was going to kill me, so I fired. I fired from low ready the first shot. Then I came up and I fired a second shot, [while] he was turning, but he still had that weapon in his hand. And then after that I couldn't take anymore shots because he retreated inside.

(Dec. 7, 2016 Crim. Trial. Tr. 43, ECF No. 53-15.)

Lloyd Harris's trial testimony fully corroborates Perez's account of these events. (*Id.* at 82-84 (testifying, among other things, that he saw Plaintiff holding a gun when Captain Perez discharged his weapon and that Perez pushed Mr. Harris to the ground just before he fired his service weapon).) This testimony – and the other facts of record detailed above – demonstrate that as Captain Perez approached the Store with Mr. Harris, he understood that an armed robbery, *i.e.*, a crime of great severity, was being committed therein. There is also no dispute that Captain Perez correctly observed that Plaintiff was holding a gun as he attempted to leave the Store.[2] The facts of record likewise demonstrate that it was only after Captain Perez observed that weapon that he – in the span of three seconds – fired two shots at Plaintiff. The foregoing facts show that

---

[2]    During his deposition, Plaintiff invoked his Fifth Amendment privilege against self-incrimination when asked if he was armed when Captain Perez shot him. (*See* Pl.'s May 22, 2018 Dep. Tr. 39-44, 84-85, ECF No. 53-8. Plaintiff's invocation of the Fifth Amendment in response to those inquiries does not preclude the Court from finding that the undisputed facts of record demonstrate that Plaintiff was armed when Captain Perez shot him. *See SEC v. Chester Holdings, Ltd.*, 41 F.Supp.2d 505, 525 (D.N.J.1999) ("Invocation of one's Fifth Amendment privilege in civil cases, either in depositions or at trial, permits an adverse inference to be drawn against the party invoking the privilege." (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)); *accord SEC v. Cooper*, 142 F. Supp. 3d 302, 312 (D.N.J. 2015). The adverse inference here is that Plaintiff was in fact armed.

Perez was objectively reasonable in his belief that Plaintiff posed an immediate threat to his safety – as well as the safety of Lloyd Harris – and that his use of deadly force in this tense, uncertain, and rapidly evolving situation was reasonable under the facts as he then understood them. *See*, *e.g.*, *Gardner*, 2018 WL 5342715, at \*12-13 (the Constitution does not require [a police officer] to wait to find out if he [is] the target of . . . gunfire before he may act on his reasonable belief that he and others are in danger.").  Plaintiff fails to identify – and the Court has likewise been unable to independently able to locate – any facts in the record which undermine this conclusion.

In light of the foregoing, Captain Perez is entitled to summary judgment on Plaintiff's Section 1983 excessive force claim. *See Plumhoff v. Rickard*, 572 U.S. 765, 768 (2014) (police officers who fatally shot a fugitive whom they reasonably believed was "intent on resuming" a chase that "pose[d] a deadly threat for others on the road" were entitled to summary judgment on excessive force claim because the facts of record demonstrated that the police acted reasonably in using deadly force to end that and thus, their actions did not violate the Fourth Amendment; those same facts demonstrated that those officers were, "in the alternative[,]" entitled to qualified immunity); *see also Conde v. City of Atlantic City*, 293 F. Supp. 3d 493, 505-06 (D.N.J. 2017) (finding, as a matter of law, that officer who shot suspect in the back twice and fired a third shot that missed acted in an objectively reasonable manner, notwithstanding that several witnesses indicated that both of the suspect's hands were raised in the air when he was shot because "the undisputed evidence show[ed] that, at the very least, the possibility existed for [the suspect] to reach into his waistband, where [the officer] and others state he holstered his weapon."); *see also Gardner v. New Jersey State Police*, No. 15-8982, 2018 WL 5342715, at \*12-13 (D.N.J. Oct. 29, 2018) (suspect's assertion that his back was to police and his hands were raised when police officer fired did not preclude court from finding, as a matter of law, that "it was objectively reasonable

for [that officer] to believe that his use of force was necessary"); *accord Bennett*, 274 F.3d at 136

("If the plaintiff fails to make out a constitutional violation . . . the officer is entitled to immunity.").

> **(ii) Officer Barry Baker is Entitled to Summary Judgment on Plaintiff's Section 1983 Excessive Force Claim; No Record Evidence Suggests that Baker's Handcuffing of Plaintiff Violated the Fourth Amendment**

The Supreme Court has explained that making an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *see also Ference v. Twp. of Hamilton*, 538 F.Supp.2d 785, 809 (D.N.J. 2008) (holding that some physical contact, alone, by police during arrest insufficient to show excessive force because "[w]ere it otherwise, police officers might have to rely on verbal instructions alone to effect an arrest for fear of section 1983 liability"). Indeed, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). It accordingly follows that viable Section 1983 excessive force claims based on handcuffing are the exception, not the rule. *See Kopec*, 361 F.3d at 777 (disavowing any notion of "open[ing] the floodgates to a torrent of handcuff claims."); *see also Leibner v. Borough of Red Bank Police Dep't*, No. 12-4104, 2013 WL 1065927, at *11 n.26 (D.N.J. Mar. 12, 2013) (delineating the facts necessary to prevail on an excessive force claim based on handcuffing and detailing the extreme facts in *Kopec* which supported such a claim). Ultimately, "[t]he unreasonableness of handcuffing requires some indication that it was done unnecessarily or excessively." *Graham-Smith v. Wilkes-Barre Police Dep't*, 739 F. App'x 727, 732 (3d Cir. 2018). In analyzing such a claim, the Court considers the totality of the facts, including whether the arrestee was in obvious pain or visible discomfort at the time he was handcuffed, and whether

there were any resulting injuries or necessary medical treatment. *Giles v. Davis*, 427 F.3d 197, 207-08 (3d Cir. 2005).

Here, Plaintiff claims that Officer Baker is liable under Section 1983 because he used excessive force when he placed Plaintiff in handcuffs on July 30, 2014. Summary judgment is granted in favor of Officer Barry Baker on this claim because there is no evidence in the record which indicates that it was improper for Baker to handcuff Plaintiff or that Baker utilized excessive force when he placed those handcuffs on Plaintiff. The following undisputed facts support this conclusion: Officer Baker arrived at the Store with the understanding that a violent felony had just been committed there. (*See*, *e.g.*, SUMF ¶ 23, ECF No. 54; *accord* Baker Cert., Ex. 1, ECF No. 53-2.) Officer Baker did not arrive at the Store until after Plaintiff had been subdued by Captain Perez and Plaintiff's robbery victims. (*Id.* at ¶ 25; *accord* Baker Cert., Ex. 1.) Upon his arrival, Baker "found Captain Perez standing over Plaintiff with a gun trained on Plaintiff, while Plaintiff lay on the ground." (*Id.*) Officer Baker then proceeded to handcuff Plaintiff. (*Id.* at ¶ 29.) There is no indication that Baker placed the handcuffs on Plaintiff in a manner which caused him any physical discomfort, much less resulted in permanent injury to Plaintiff. (*See*, *e.g.*, *id.* at ¶ 38; *accord* Antoine Cert., Ex. H (copies of relevant portions of University Hospital's July 30, 2014 records), ECF No. 53-13.) The undisputed facts further show that at the time Officer Baker placed handcuffs on Plaintiff, he was unaware that Plaintiff had been shot. (*Id.* at ¶¶ 26-27; *accord* Baker Cert., Ex. 1.) Indeed, "Plaintiff never advised Officer Baker that he had been shot[] while Plaintiff was being handcuffed" and "never complained about any pain from being shot." (*Id.* at ¶¶ 27-28.) It was only when Baker placed Plaintiff in a patrol car, *after* Plaintiff was already in handcuffs, that Officer Baker noticed Plaintiff was bleeding from his back and learned that Plaintiff had been shot. (*Id.* at ¶ 30; *accord* Baker Cert., Ex. 1.)

These undisputed facts in no way suggest that it was improper for Officer Baker to handcuff Plaintiff or that Baker otherwise utilized excessive force to effectuate the arrest. Plaintiff has therefore failed to present "sufficient evidence to establish a dispute as to the excessiveness or unreasonableness of [Baker's] handcuffing of [him, and] there [accordingly] exists no question of fact for a jury to decide." *Graham-Smith*, 739 F. App'x at 732; *accord Leibner*, 2013 WL 1065927, at *11 n.26 (dismissing excessive force claim where "Plaintiff [failed to allege] that he was in obvious discomfort or pain during handcuffing, that he sustained any injuries other than 'marks,' or that he needed treatment for any complications relating to his being handcuffed."). Summary judgment is therefore granted in favor of Officer Barry Baker on Plaintiff's Section 1983 excessive force claim. *Graham-Smith*, 739 F. App'x at 732-33 (affirming entry of summary judgment on excessive force handcuffing claim because plaintiff failed to present "sufficient evidence establish a dispute as to the excessiveness or unreasonableness of police officer's handcuffing" and additionally affirming district court's finding that officer was entitled to qualified immunity because plaintiff failed to "establish[] the violation of any of her constitutional rights by [that officer's] reasonable use of force).

    **e. Summary Judgment is Granted on Plaintiff's Section 1983 Delay of Medical Care Claim; No Record Evidence Suggests that Any of the Remaining Defendants Acted with Deliberate Indifference to Plaintiff's Serious Medical Needs**

Government officials are required to provide appropriate medical care to injured arrestees in their custody. *Conde*, 293 F. Supp. 3d at 506. The deliberate indifference of police officers to the serious medical needs of such arrestees "constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotations and additional citations omitted). The Eighth Amendment's deliberate indifference standard, applies, through the Fourteenth Amendment, to Plaintiff's

Section 1983 delay of medical care claim. *Id.* (applying that standard to claim that law enforcement officials denied appropriate medical care to arrestee after he was shot twice in the back by a police officer); *Suarez v. City of Bayonne*, 566 F. App'x 181, 187 (3d Cir. 2014) (applying deliberate indifference standard to a arrestee's denial of medical care claim); *accord Smith v. Gransden*, 553 F. App'x 173, 177 (3d Cir. 2014) ("[d]eliberate indifference to the medical needs of arrestees violates their Fourteenth Amendment right to due process"); *see also City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (noting that "the due process rights of a person [who was injured while being apprehended by the police] are at least as great as the Eighth Amendment protections available to a convicted prisoner").

In accordance with the foregoing, Plaintiff will prevail on his Section 1983 delay of medical care claim only if he can prove that his medical needs were "objectively serious" and that the Remaining Defendants exhibited "deliberate indifference" to those needs. *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (citing *Estelle*, 429 U.S. at 97); *Conde*, 293 F. Supp. 3d at 506 (same). Objectively serious medical needs include, *inter alia*, "one[s] that [are] so obvious that a lay person would easily recognize the necessity for a doctor's attention[.]" *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal citations omitted). For purposes of the present summary judgment motion, the Court accepts that Plaintiff's medical needs on July 30, 2014 were "objectively serious."

The Court nonetheless grants summary judgment on Plaintiff's Section 1983 delay of medical care claim because nothing in the record suggests that any of the Remaining Defendants intentionally delayed medical treatment or otherwise acted with deliberate indifference to Plaintiff's serious medical needs on July 30th. Initially, the Court notes that the sole factual allegation as to this claim is that the Remaining Defendants intentionally took a circuitous route to

University Hospital to delay medical treatment to Plaintiff for the injuries he sustained on July 30, 2014. (*See* Pl.'s May 22, 2018 Dep. Tr. 60, ECF No. 53-8.) The evidence of record conclusively demonstrates that Officer Baker is the only Remaining Defendant who had any involvement in transporting Plaintiff on that date. Thus, at the outset, summary judgment on this claim as to Captain Perez and Officer Oliveira is appropriate because it is undisputed that neither of these Defendants had "personal involvement" in the transportation of Plaintiff from the Store to University Hospital. *Evancho*, 423 F.3d at 353.

The following additional undisputed facts are material to the Court's conclusion that summary judgment is also appropriate as to Officer Baker: Plaintiff entered the Store at or about 3:00 p.m. and was shot by Captain Perez shortly thereafter. (SUMF ¶¶ 1-2, ECF No. 54.) Officer Baker did not know that Plaintiff had been shot when he subsequently handcuffed Plaintiff and removed him from the Store. (*Id.* at ¶¶ 29-30.) It was only when Officer Baker placed Plaintiff in the back of a patrol car that Baker "noticed for the first time that Plaintiff was bleeding profusely from the back." (*Id.* at ¶ 30; *accord* Baker Cert., Ex. 1, ECF No. 53-2.) In response to this discovery, "[Officer] Baker immediately set about driving Plaintiff to the hospital in [a] patrol car at about 3:10pm, rather than waiting for an ambulance." (*Id.* at ¶ 31; *accord* Johns Cert., Ex. AA (relevant portions of Newark Police Department's July 30th event chronology report), ECF No. 53-4 at PageID: 709.) At 3:13 p.m., while on the way to the hospital, Officer Baker flagged down an ambulance, and helped transfer Plaintiff to that vehicle for preliminary medical treatment. (*Id.* at ¶¶ 33-34; *accord* Baker Cert., Ex. 1; Antoine Cert., Ex. H, ECF No. 53-13 at PageID: 940.) Officer Baker thereafter arranged for police escorts and the blocking of traffic to expedite Plaintiff's transportation to the hospital. (*Id.* at ¶ 35; *accord* Baker Cert., Ex. 1.) Plaintiff was admitted to University Hospital's emergency department at 3:28 p.m. (*Id.* at ¶ 42; *but see* Antoine

Cert., Ex. H at PageID: 944 (indicating that Plaintiff arrived in emergency room at 3:25 p.m.).)

Plaintiff was ready to be discharged from University Hospital just over three hours later, at 6:45

p.m. (*Id.* at ¶ 43; *accord* Antoine Cert., Ex. H at PageID: 945 (confirming same and further

showing that Plaintiff was formally discharged at 7:05 p.m.).)

These undisputed facts demonstrate that Officer Baker responded promptly and

appropriately upon learning that Plaintiff had been shot. Indeed, Officer Baker began driving

Plaintiff to University Hospital at 3:10 p.m., *i.e.*, within ten minutes, at most, of Plaintiff being

shot. At 3:13 p.m., *i.e.*, three minutes after Baker began driving Plaintiff from the Store, Plaintiff

was transferred from Baker's vehicle to the passing ambulance which Baker flagged down, at

which point trained medical personnel began treating Plaintiff's injuries. Officer Baker thereafter

ensured that the ambulance carrying Plaintiff promptly arrived at University Hospital through the

use of police escorts and by blocking traffic. The record conclusively shows that Plaintiff arrived

at University Hospital for treatment no later than 3:28 p.m., *i.e.*, within 28 minutes, at most, of

being shot. This undisputed timeline of events in no way suggests that Officer Baker – or any

member of the Newark Police Department, for that matter – acted with deliberate indifference to

Plaintiff's medical needs, particularly where those injuries, while apparently quite serious,

ultimately required Plaintiff to be hospitalized for just over three hours. *See Conde*, 293 F. Supp.

3d at 507-08 (summary judgment awarded on deliberate indifference to medical needs claim where

undisputed facts showed that victim who was fatally shot by police "was on his way to a hospital

in an ambulance within seven minutes of being shot."); *Jennings v. Fetterman*, 197 F. App'x 162

(3d Cir. 2006) (affirming summary judgment in favor of two police officers on plaintiff's claim

that they deliberately delayed medical treatment for two hours because the uncontroverted "record

evidence showed that [plaintiff] was medically treated at the scene for his injuries, initially by a firefighter . . . , and later by a second ambulance which had been called.").

In addition, the record is devoid of evidence which suggests that any of Plaintiff's injuries on July 30th were the result of Baker's alleged delay in providing medical care or that Plaintiff's condition worsened because of that unsubstantiated delay.   That consideration provides additional support for the Court to award summary judgment in favor of Officer Baker.   *See Bocchino v. City of Atlantic City*, 179 F. Supp. 3d 387, 406 (D.N.J. 2016) (fact that "[p]laintiff has provided no evidence that any delay or denial of medical care 'exacerbated his medical condition, caused infection, or otherwise subjected him to an increased risk of harm'" supported summary judgment on plaintiff's denial of medical care claim) (citations omitted); *see also Horvath v. City of New York*, No. 12-6005, 2015 WL 1757759, at *6 (E.D.N.Y. Apr. 17, 2015) (granting summary judgment on plaintiff's denial of medical care claim where plaintiff "offer[ed] evidence of a number of injuries resulting from [an] alleged assault[,]" but made "no attempt to connect [those injuries] to the alleged delay in medical attention").

As the foregoing demonstrates, there is no record evidence which suggests that any of the Remaining Defendants intentionally delayed medical treatment to Plaintiff or otherwise acted with deliberate indifference to Plaintiff's medical needs on July 30, 2014 in a manner giving rise to Section 1983 liability.   The undisputed facts of record instead show that Officer Barry Baker, *i.e.*, the only Remaining Defendant who had personal involvement in the provision of medical care to Plaintiff on July 30th, responded promptly and appropriately upon learning that Plaintiff was shot; Summary judgment is accordingly granted in favor of all Remaining Defendants on Plaintiff's Section 1983 delay of medical care claim.   *See Bennett*, 274 F.3d at 136 ("If the plaintiff fails to make out a constitutional violation . . . the officer is entitled to immunity.").

### f. Summary Judgment is Granted on Plaintiff's Parallel State Law Excessive Force and Delay of Medical Care Claims

Section 1983's state law counterpart, the New Jersey Civil Rights Act, provides, in relevant part, that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges, or immunities secured by the Constitution or laws of this State . . . by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. § 10:6-2(c).

The language of NJCRA § 10:6-2(c) mirrors the language set forth in 42 U.S.C. § 1983. That is because "[NJCRA] was intended to serve as an analog to 42 U.S.C. § 1983; it was designed to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence." *See Slinger v. New Jersey*, No. 07-5561, 2008 WL 4126181, at *5 (D.N.J. Sept. 4, 2008), *rev'd on other grounds*, 366 F. App'x 357 (3d Cir. 2010). In other words, "[c]ourts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart: Section 1983." *Chapman v. N.J.*, No. 08-4130 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009) (citing *Newport v. Fact Concerts*, 453 U.S. 247, 259-261, (1981); *Allen v. Fauver*, 167 N.J. 69, 74 (N.J. 2001)).

As the above-cited cases suggest, the Court's foregoing analysis regarding the viability of Plaintiff's federal section 1983 claims against the Remaining Defendants applies with equal force to Plaintiff's parallel state law claims under NJCRA. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443–44 (D.N.J. 2011); *Gardner*, 2018 WL 5342715, at *15; *Hedges v. Musco*, 204 F.3d 109, 120 n.12 (3d Cir. 2000) (concluding that New Jersey's constitutional provision concerning unreasonable searches and seizures is interpreted analogously to the Fourth Amendment); *Bayette v. Ricci*, 489 F. App'x 540, 543 n. 2 (3d Cir. 2012) (utilizing same analysis

for NJCRA and Section 1983 denial of medical care claims "because the test for cruel and unusual punishment under the New Jersey state Constitution 'is generally the same as that applied under the federal Constitution.'") (citation omitted); *Pierce v. Cherry Hill Twp.*, No. 09-6487, 2013 WL 3283952, at *11 n.15 (D.N.J. June 26, 2013) (noting that the "[New Jersey] Legislature anticipated that New Jersey courts would apply the well-established law concerning the affirmative defense of qualified immunity in adjudicating damage claims under the [New Jersey Civil Rights] Act.") (citing *Ramos v. Flowers*, 56 A.3d 869, 876 (N.J. Super. Ct. App. Div. 2012)).  It accordingly follows that summary judgment on Plaintiff's NJCRA excessive force and delay of medical care claims is granted in favor of all Remaining Defendants based on the same factual and legal considerations, detailed above, which support the Court's award of summary judgment on Plaintiff's parallel federal Section 1983 claims.

## V.      CONCLUSION

For the foregoing reasons, the Remaining Defendants' motion for summary judgment is granted.   There is no genuine dispute of material fact precluding summary judgment.   In addition, and alternately, because there were no constitutional violations, the Remaining Defendants are also entitled to qualified immunity.   All remaining claims against all Remaining Defendants are dismissed with prejudice.   An appropriate Order accompanies this Opinion.


Date: January 24, 2019                                  s/ John Michael Vazquez
At Newark, New Jersey                               JOHN MICHAEL VAZQUEZ
                                                                      United States District Judge